# Charleston.

## ANDREW G. GRINNAN et al. vs. WILLIAM H. EDWARDS.

### January Term, 1872.

Decree against parties as absent defendants, December 14th, 1864. They ask, on the 29th December, 1869, to file petition for rehearing, which is denied, and they recite in their appeal bond that, " if the decree of December 14th, 1864, be affirmed," &c. And it is HELD :

That they cannot appeal from that decree (five years having elapsed), but the appeal should have been from the order refusing the filing of their petition ; and the present appeal must therefore be dismissed.

Bill filed at January rules, 1864, to subject land to payment of purchase money.    The defendants were proceeded against as non-residents; they resided within the Confederate military lines.    Decree for sale at June term, 1864, of circuit court of Kanawha county.    Decree of confirmation of sale, October 7th following, and final decree December 14th, 1864, affirming the deed of commissioner to purchaser.

On the 29th of December, 1869, the defendants offered to file a petition asking the court to open the decree entered, with leave to file an answer, alleging informality in the proceedings, &c., against them.    But the motion to so file the petition was refused.

The defendants, in their undertaking, recite the decree confirming the deed, as the one which they undertake, &c.

The cause here was heard on a motion to dismiss the appeal.

*J. S Swann* and *John S. Hoffman* for the appellants.

In the United States circuit court, district of Connecticut, *Semmes, Administrator of Luckett* vs. *City Fire Insurance Company*, reported in the American Law Register, "The late rebellion was such a war as suspended the right of a citizen of Mississippi to sue on a policy of insurance in a Connecticut company

The right to sue was suspended by the proclamation of the President, of August 16th, 1861.

The period of war must be omitted in computing the statute of limitations and that period ended with the proclamation of the President, June 13th, 1865, the statute commenced running again from that time," &c.

We say in this case, Grinnan, against whom decree went by default, was kept by the conflict of arms from appearing within five years, as provided by statute for non-residents, and hence his remedy is by this petition, and that remedy can only be lost by becoming *stale.* That he could not appear within the five years, was his misfortune, not his fault; see *Ewin* vs. *Vint,* 6 Mun. 267. He did not make the war. It was unlawful and criminal in him to come within the Federal lines. To do so was to risk his life; to do so was to run the hazard of being shot or imprisoned by both the contending powers; to do so subjected him to punishment and to a forfeiture to the government of the money brought to Edwards, which was prohibited by the act of congress and the proclamation of the President. To make him lose his property under such circumstances would be a mockery of justice; and we refer with perfect confidence to the decision in the United States supreme court: Ouachitar Cotton, 6 Wallace, 520; Idem 532, *Hanger* vs. *Abbott.* We must note that the decree rendered in this cause, directing a sale of this land, recites that at a court held the 14th June, 1864, this cause came on to be heard the 14th *February,* 1864. In other words, the decree shows itself an impossibility.

The statutes referred to, prohibiting commerce, &c., will be found in Brightly's Digest, vol. 2, title, Insurrection, pp. 193 to 196.

This suit being against a non-resident and under the statute by order of publication, we must note:

That the reason of this statute was founded on the justice of giving the right of action where process could not be served on the person. But it did not mean to put the plaintiff at such advantage as to allow him to avail himself of such a state of things as rendered it impossible for the defendant to appear. Now a conflict of arms creates that impossibility; where the plaintiff lives in the limits of the

military occupation of one power, while the defendant lives in the limits of the military occupation of another power; and as it cannot be, the subject of Great Britain, for example, being under the dominion of that power, cannot be sued by a citizen of the United States by publication, while the two countries are at war, so likewise with the citizen of a rebellious State while excluded from all possibility of appearing by the conflict of arms; and more especially is this the case when a law of the United States expressly prohibits him from coming into the limits of the jurisdiction of the court where he is sued. For if the supreme law prohibits him from appearing in the court, and a State law invites him, or by publication warns him, that he must, in order to defend himself, come into the limits from which he is excluded by the law of congress, then the mandate of the court of the State being contrary to the law of congress, is unlawful, null and void. In other words, the law of congress suspended the right of the State judge to bring into the limits of the State, or to give countenance while there, to any person who lives in a rebel State. Of course where a defendant left the loyal State of his free will and went to the disloyal State, he could not avail himself of his own act and thus avoid an action against him.

*Smith & Knight* for appellee.

If this is an appeal from the decree in the original suit of *Edwards* vs. *Grinnan and others*, it is too late. The decree confirming the sale was made October 7th, 1864, and the final decree approving the deed of Commissioner Rand was made on the 14th day of December, 1864; see pages 14 and 15 of the record. The appeal was not taken till the 30th day of December, 1869, more than five years after the decrees above mentioned were rendered. See Code of West Va. chap. 135, sec. 2. Besides, defendants against whom judgment or decree is rendered on order of publication, cannot appeal; they must petition to re-hear, under the statute. See *Platt* vs. *Howland*, 10 Leigh, 507; *Barbee & Co.* vs. *Pannell*, 6 Grattan, 442; *Lenows* vs. *Lenow*, 8 Grattan, 349.

If it is an appeal from the order of the court refusing to entertain the petition for opening up the decree in the original suit, the order itself sets forth sufficient grounds why the

petition could not be entertained, it not having been pre-
sented within five years after the rendition of the decree com-
plained of.    See Code of West Va., chap. 106, sec. 26,    Besides,
the petition is fatally defective in form : it is not sworn to,
nor does it set forth the residence of the defendant when the
decree was rendered, nor the State of which he claimed to be
a citizen.    See Code of West Virginia, chap. 106, sec. 26.

MAXWELL, J.    This was a bill to subject a tract of land to
sale for the payment of the purchase money alleged to be due
thereon, in which the defendants were proceeded against as
non-resident or absent defendants.

The defendants offered to file their petition, under the
statute, to have the case re-heard, but the court refused to
allow the petition to be filed.    The appeal is from the decrees
rendered in the cause, which they asked in their petition to
have re-heard, and is not from the order refusing to allow the
petition to be filed.    The defendants cannot, as they have
attempted to do, appeal from the decree rendered against
them in their absence, but the appeal should have been from
the order refusing to allow them to file their petition.    *Le-
nows* vs. *Lenow*, 8 Gratt., 349 ; *Barbee* vs. *Pannell*, 6 Gratt., 442 ;
*Platt* vs. *Howland*, 10 Leigh, 507.

The appeal will therefore have to be dismissed with costs
to the appellee.

The other judges concurred.

APPEAL DISMISSED.